## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA
EX REL. KEVIN P. MCDONOUGH,

STATE OF FLORIDA                                    10-61570-Civ-Dimitrouleas/Snow
EX REL. KEVIN P. MCDONOUGH,

      Plaintiffs,

vs.

BRUCE KOPLOWITZ,
FLORIDA BEDSIDE IMAGING, LLC
RAYMACK ENTERPRISES, INC.
DENNIS FRANCIS ROSEBROUGH
PORTABLE MEDICAL DIAGNOSTICS INC.
ROBERT J HYMAN, MD
JANET BARNETT

      Defendants

_____

### FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW QUI TAM RELATOR-PLAINTIFF Kevin P. McDonough [hereinafter "Relator or "McDonough"], suing for himself and for the United States of America and the State of Florida, and alleges as follows:

### I. NATURE OF ACTION

1.    Relator, Kevin P. McDonough, brings this action under the Federal Civil False Claims Act, 31 U.S.C. §3729 *et seq*., in the name of and on behalf of the United States of America, to recover treble damages and civil penalties arising from Defendants' submission, and/or causing the submission, of false claims to the United States and the State of Florida (hereinafter "the

Government") for payment and/or reimbursement of Medicare and Medicaid services, and the Government's actual payment and/or reimbursement of such false claims.

2.     This action alleges the Defendants have engaged in a common scheme and conspiracy to systematically defraud the United States.

3.     Defendants have caused the submission of false claims in violation of the False Claims Act and all claims filed by defendants are false due to:

- Lack of qualified medical supervision. All claims filed without qualified medical supervision are false.
- Failure to report change in ownership when Mr. Koplowitz purchased others' Medicare provider numbers. In order for Mr. Koplowitz to hide lack of qualification for a Medicare provider number due to his felony cocaine convictions he showed a straw officer/owner (defendant Janet Barnett) in his place.

4.     As a result, Defendants have submitted or caused to be submitted numerous false claims for payment to Medicare, Medicaid, and other federal healthcare programs.

## II. JURISDICTION AND VENUE

5.     This is an action for civil damages and penalties under the Federal Civil False Claims Act, 31 U.S.C. §3729 *et seq*. ("FCA").

6.     Jurisdiction over this action is vested in this Court by 31 U.S.C. § 3732, which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. § 3729 and § 3730; pursuant to 28 U.S.C. § 1331, which confers federal subject matter jurisdiction; and pursuant to 28 U.S.C. § 1345 because the United States is a plaintiff.

7.     This Court has jurisdiction over Plaintiff's state law claims under 31 U.S.C. § 3732(b) and also has supplemental jurisdiction over Plaintiff's Florida claims under 28 U.S.C. § 1367.

8.     This Court has personal jurisdiction over Defendants under 31 U.S.C. § 3732(a) because one or more Defendants can be found, resides, or transacts business in this District, and because acts proscribed by 31 U.S.C. §3729 occurred in this District. One or more Defendants have also

made, used, or caused to be made or used, false or fraudulent records in this District to get false or fraudulent claims paid or approved by the Government. Venue is proper in this district under 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391.

9.       Before filing the original Complaint, Relator voluntarily provided to the Attorney General of the United States, the United States Attorney for the Southern District of Florida, and to the Attorney General of Florida, pursuant to a joint prosecutorial and common interest privilege statement, a summary of known material evidence and information related to the Complaint, in accordance with the provisions of 31 U.S.C. § 3730(b)(2) and Fl. Stat. Ann. § 68.083(3).

10.       As required by the Federal Civil False Claims Act, 31 U.S.C. §3730(a)(2), Relator has served upon the Government, pursuant to Rule 4(d)(4) of the Federal Rules of Civil Procedure, "a copy of the complaint and written disclosure of substantially all material evidence and information the person [Relator] possesses." This Disclosure Statement is supported by material evidence known to the Relator at the time of its filing.

11.       Because the Disclosure Statement includes attorney-client communications and work product of Relator's counsel and is submitted to the Attorney General and to the United States Attorney in their capacities as potential co-counsel in the litigation, and therefore pursuant to the joint prosecutorial privilege, Relator understands this Disclosure Statement to be confidential.

12.       Relator alleges that he directly, independently, and personally has observed and gained knowledge of the activities described herein and undertaken by Defendants and their agents, and that this Complaint and the other information that he has provided is based upon such knowledge and observations.

13.       None of the material allegations set forth in this Complaint are based on a "public disclosure" of allegations or transactions in a criminal, civil, or administrative hearing pursuant

to 31 U.S.C. §3730(3)(4)(A), in a congressional, administrative, or General Accounting Office report, hearing, audit, or investigation; or from the news media.

14.     In the unlikely event that it were ever found that there has been a "public disclosure" of these allegations Relator nonetheless would be an "original source."

### III. PARTIES

15.     The parties to this litigation all live or work in the Southern District of Florida, within the jurisdiction of this court.

16.     The **United States of America,** and the **State of Florida** are the real parties in interest to the claims advanced below.

**Qui Tam Plaintiff McDonough**

17.     **Kevin P. McDonough** ("Relator"), a resident of Seminole County, Florida, is a retired Registered X-ray Technologist. From 2005 to the present, Relator has worked in the Southern and Middle districts of Florida as an independent consultant to mobile x-ray companies in the areas of billing for Medicare reimbursement, compliance and administration.

18.     The facts alleged in this Complaint are based upon Relator's direct and independent knowledge obtained from his personal experiences operating his own portable x-ray businesses; private conversations with Defendant Dennis "Denny" Rosebrough; observations at Defendants' office; experience serving as a consultant to Vesta Solutions Group a teleradiology provider which provided services to Defendants; attendance at trade shows; and communications with others in the industry.

19.     Relator brings this civil action for violations of the Federal Civil False Claims Act pursuant to the provisions of 31 U.S.C. §3730(b)(1), which provides in relevant part that "[a] person may bring a civil action for a violation of section 31 U.S.C. §3729 for the person and for

the United States Government."

**Defendant Bruce Koplowitz**

20.     Defendant **Bruce Koplowitz** is a resident of Broward County, Florida. Mr. Koplowitz had been the sole officer (President) and sole director of Raymack Enterprises, Inc., d/b/a Raymack Diagnostic Imaging from 2004 to 2005.

21.     On information and belief, Defendant Koplowitz continues to control Raymack Enterprises, Inc.

22.     Defendant Koplowitz has experience in this industry since he incorporated Reliable Diagnostic Imaging, Inc. (not a party to this litigation) in 1999.

**Defendant Janet Barnett**

23.     Janet Barnett represents herself as the owner of Raymack Diagnostic Imaging which she purchased from Defendant Koplowitz.

24.      Janet Barnett as president, secretary, treasurer and registered agent of Raymack Diagnostic Imaging.

**Defendant Florida Bedside Imaging, LLC**

25.     Florida Bedside Imaging, LLC f/k/a Raymack Computerized X-ray and Ultrasound Services, LLC is a Florida LLC located in the city of Davie, Broward County, FL.

26.     NPPES shows Defendant Florida Bedside Imaging, LLC operates using NPI 1639305063 as a mobile radiology clinic.

27.     Defendant Florida Bedside Imaging, LLC is jointly managed by Defendants Koplowitz and  Rosebrough.

**Defendant Raymack Enterprises, Inc., d/b/a Raymack Diagnostic Imaging**

28.     Defendant Raymack Enterprises, Inc. is a Florida corporation located in the city of Davie, Broward County, FL.

5

29.     Raymack Enterprises, Inc. uses Medicare provider number E2725.

**Defendant Dennis Francis Rosebrough**

30.     Dennis Francis Rosebrough, RT, is a resident of Palm Beach County, Florida.

31.     Mr. Rosebrough has a Medicare provider number W9857**.**

**Defendant Portable Medical Diagnostics Inc.**

32.     Portable Medical Diagnostics Inc. is a Florida corporation.

33.     NPPES shows Dennis Rosebrough as Portable Medical Diagnostics Inc.'s "authorized official," with NPI: 1093759276 and Medicare provider number W9857**.**

**Defendant Robert J Hyman, MD**

34.     Robert J Hyman, MD, license ME 59226, works or resides in Broward County, Florida.

35.     Robert J Hyman, M.D., is the medical director of Defendant Raymack Enterprises, Inc., d/b/a Raymack Diagnostic Imaging.

**Defendants -- All**

36.     "Defendants," as used herein, includes all Defendants, their officers, directors, agents, and employees.

37.     Relator is informed and believes that the Defendants, and each and all of them, at all relevant times hereinafter mentioned were the agents, employees, servants, joint venturers, parent companies, subsidiaries, sister companies, successor companies, directors, fiduciaries, representatives, and/or co-conspirators of each of the remaining Defendants.

38.     Defendants, in their actions and conduct hereinafter alleged, were acting within the course and scope of such relationship and were responsible for the occurrences herein alleged.

39.     Relator is informed and believes that a material percentage of the revenues generated by the Portable Medical Diagnostics Inc. and Raymack Enterprises, Inc. is derived from treatment of patients who participate in the Medicare and Medicaid programs.

6

40.     Each false claim described herein was submitted or caused to be submitted to the Medicare Program with the knowledge or reckless disregard of some or all Defendants, through their directors, officers, agents, and employees.

41.     All of the false claims submissions described herein were approved, directed, or authorized by one or more Defendants.

## IV.  THE LAW

### A.  Medicare and Portable X-Ray Reimbursement

42.     The Plaintiff, United States of America, administers the Supplemental Medical Insurance Program for the Aged and Disabled established by Part B, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395j-1395w ("Medicare Part B Program"). The objective of the Medicare Program is to provide Medical insurance for covered services to any person 65 years or older, to certain disabled persons, and to individuals with chronic disease who elect coverage under the program. The Department of Health and Human Services ("DHHS") has delegated the administration of the Medicare Program to its component agency, Centers for Medicare and Medicaid Services ("CMS").

43.     The Medicare program, established in 1965 by Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et. seq.,* consists of two parts. Medicare Part A authorizes the payment of federal funds for hospitalization and post-hospitalization care, including care in SNFs and long-term care facilities. Medicare Part B authorizes the payment of federal funds for medical and other health services, including without limitation, physician services, laboratory services, outpatient therapy, diagnostic services, radiology services, ambulance services, portable x-rays, and durable medical equipment. These payments are fixed by the Medicare Fee Schedule ("MFS").

44.     CMS enters into provider agreements with providers and suppliers to establish eligibility

to participate in the Medicare Program. In order to be eligible for payment under the program, providers and suppliers must submit applications and be accepted by the programs as participating providers. In order to be reimbursed through the program, participating providers must certify to the government that they understand that payment of claims is conditioned on the claim and the underlying transaction complying with all applicable laws, regulations and program instructions including the Anti-Kickback Statute.

45.     In order for a mobile x-ray provider to obtain payments from CMS, a provider must apply for participation in the Medicare and Medicaid programs. A participating supplier "means a supplier that has an agreement with CMS to participate in Part B of Medicare in effect on the date of the service." 42 C.F.R. §202. A participating provider is one who is either (in the fee-for-service program), "any individual or entity furnishing Medicaid services under an agreement with the Medicaid agency;" or (for the managed care program,) "any individual or entity that is engaged in the delivery of health care services and is legally authorized to do so by the State in which it delivers the services." 42 C.F.R. §203.

46.     Diagnostic radiology services include both a Technical Component ("TC") and Professional Component ("PC").

47.     The PC of a performed x-ray – the radiologist's interpretation of the x-rays – is billed separately by the physician or the physician's assignees under Part B.

48.     The TC– the service performed by the portable x-ray provider to Medicare, Medicaid, TRICARE, Veterans' Administration.

**B. Independent Diagnostic Testing Facility – Lack of Disclosure**

49.     In 1998, the Center for Medicare and Medicaid services ("CMS") implemented the regulatory creation of Independent Diagnostic Testing Facilities ("IDTF") found at 42 C.F.R. §

410.33. IDTF Regulations are among those found withing "Conditions for Supplemental Medical Insurance benefits are regulated at part 410."

50.    The Medicare regulation in section § 410.33(a) provided that Medicare would pay for diagnostic tests under the Medicare physician fee schedule only where the services were provided by a physician, a group of physicians, an approved portable x-ray supplier, or an IDTF.

51.    An Independent Diagnostic Testing Facility ("IDTF") must comply with the applicable laws of any State in which it operates. 42 C.F.R. § 410.33(f)

52.    An IDTF must certify in its enrollment application that it operates its business in compliance with all applicable Federal and State licensure and regulatory requirements. 42 C.F.R. § 410.33(g)(1).

53.    An IDTF must certify in its enrollment application that it provides complete and accurate information on its enrollment application. Changes in ownership, changes of location, changes in general supervision, and adverse legal actions must be reported within 30 calendar days of the event. All other changes to the enrollment application must be reported within 90 days. 42 C.F.R. § 410.33(g)(2).

54.    An IDTF must disclose to the government any person having ownership, financial, or controlling interest or any other legal interest in the supplier at the time of enrollment or within 30 days of a change. 42 C.F.R. § 410.33(g)(10).

55.    As set forth below in greater detail, an IDTF's supervising physician must evidence proficiency in the performance and interpretation of each type of diagnostic procedure performed by the IDTF. 42 C.F.R. § 410.33(b)(2)

56.    If an IDTF fails to meet one or more of the standards listed in § 410.33(g) at the time of enrollment, its enrollment will be denied. CMS will revoke a supplier's billing privileges if an

IDTF is found not to meet the standards in paragraph (g) or (b)(1) of this section 410.33. 42 C.F.R. § 410.33(h).

**C. Qualified Medical Supervision is a Condition of Payment**

57.     Medicare providers must possess "demonstrated capability to carry out [their contractual] activities." 42 U.S.C. § 1395 ddd(c)(1). The statute also provides that the Medicare providers must also "meets such other requirements as the Sec. may impose." 42 U.S.C. § 1395 ddd(c)(5).

58.     Regulations governing Independent Diagnostic Testing Facilities ("IDTF"), 42 C.F.R. § 410.33 are among those found withing "Conditions for Supplemental Medical Insurance benefits are regulated at part 410" and include:

> (b) Supervising physician.
> ...
> (2) The supervising physician must evidence proficiency in the performance and interpretation of each type of diagnostic procedure performed by the IDTF. The proficiency may be documented **by certification in specific medical specialties** or subspecialties or by criteria established by the carrier for the service area in which the IDTF is located. In the case of a procedure requiring the direct or personal supervision of a physician as set forth in §410.32(b)(3)(ii) or (b)(3)(iii), the IDTF's supervising physician must personally furnish this level of supervision whether the procedure is performed in the IDTF or, in the case of mobile services, at the remote location.     . . . .
> ...
> ...
> (h) Failure to meet standards. If an IDTF fails to meet one or more of the standards in paragraph (g) of this section at the time of enrollment, its enrollment will be denied. CMS will revoke a supplier's billing privileges if and IDTF is found not to meet the standards in paragraph (g) or (b)(1) of this section.
> [emphasis supplied]

59.     Services furnished without the required level of supervision are not reasonable and necessary:

> § 410.32   Diagnostic x-ray tests, diagnostic laboratory tests, and other diagnostic tests: Conditions.
> (b) Diagnostic x-ray and other diagnostic tests —
>       (1) Basic rule. Except as indicated in paragraph (b)(2) of this section, all diagnostic x-ray and other diagnostic tests covered under section 1861(s)(3) of the

Act and payable under the physician fee schedule must be furnished under the appropriate level of supervision by a physician as defined in section 1861(r) of the Act. *Services furnished without the required level of supervision are not reasonable and necessary* (see §411.15(k)(1) of this chapter). [emphasis supplied]

60.     CMS established and publishes qualification requirements of the supervising physician with respect to billing (CPT/HCPCS) codes for Independent Diagnostic Testing Facility (IDTF).[1]

61.     The preamble to the final rule of October 31, 1997 assigned a level of physician supervision to most diagnostic tests payable under the physician fee schedule and was implemented January 28, 1998. The list provides the required level of physician supervision for each test performed.

62.     Current CPT/HCPCS codes and the qualification requirements of the supervising physician and the interpreting physician are set forth below with respect to relevant codes billed by defendants.

| | |
|---|---|
| 70100 | Board Certified (ABMS[2] or AOA) Radiologist |
| 70110 | Board Certified (ABMS or AOA) Radiologist |
| 70150 | Board Certified (ABMS or AOA) Radiologist |
| 70260 | Board Certified (ABMS or AOA) Radiologist |
| 71010 | Board Certified (ABMS or AOA) Radiologist |
| 71020 | Board Certified (ABMS or AOA) Radiologist |
| 71100 | Board Certified (ABMS or AOA) Radiologist |
| 72010 | Board Certified (ABMS or AOA) Radiologist |
| 72040 | Board Certified (ABMS or AOA) Radiologist |
| 72070 | Board Certified (ABMS or AOA) Radiologist |
| 72100 | Board Certified (ABMS or AOA) Radiologist |
| 72170 | Board Certified (ABMS or AOA) Radiologist |

---

[1]     http://www.cms.gov/medicare-coverage-database/lcd_attachments/29195_4/IDTF.1_codeguide.htm
        Coding Guidelines for Independent Diagnostic Testing Facility (IDTF).

[2]     The ABMS (American Board of Medical Specialties), a non-profit physician-led umbrella organization for approved medical specialty boards has approved the American Board of Radiology (ABR) as its medical specialty board in diagnostic radiology.
        The AOA (American Osteopathic Association, for osteopathic physicians (DOs)) authorized The American Osteopathic Board of Radiology (AOBR) to certify DOs to the Bureau of Osteopathic Specialists in diagnostic radiology.

| | |
|---|---|
| 73030 | Board Certified (ABMS or AOA) Radiologist or Orthopaedic Surgeon |
| 73060 | Board Certified (ABMS or AOA) Radiologist or Orthopaedic Surgeon |
| 73080 | Board Certified (ABMS or AOA) Radiologist or Orthopaedic Surgeon |
| 73090 | Board Certified (ABMS or AOA) Radiologist or Orthopaedic Surgeon |
| 73110 | Board Certified (ABMS or AOA) Radiologist or Orthopaedic Surgeon |
| 73130 | Board Certified (ABMS or AOA) Radiologist or Orthopaedic Surgeon |
| 73510 | Board Certified (ABMS or AOA) Radiologist or Orthopaedic Surgeon |
| 73550 | Board Certified (ABMS or AOA) Radiologist or Orthopaedic Surgeon |
| 73562 | Board Certified (ABMS or AOA) Radiologist, Orthopaedic Surgeon or Podiatrist |
| 73590 | Board Certified (ABMS or AOA) Radiologist, Orthopaedic Surgeon or Podiatrist |
| 73610 | Board Certified (ABMS or AOA) Radiologist, Orthopaedic Surgeon or Podiatrist |
| 73620 | Board Certified (ABMS or AOA) Radiologist, Orthopaedic Surgeon or Podiatrist |
| 74000 | Board Certified (ABMS or AOA) Radiologist |
| 74020 | Board Certified (ABMS or AOA) Radiologist (or Urologist added since 2009) |
| 76536 | Board Certified (ABMS) Radiologist or Neurologist |
| 76700 | Board Certified (ABMS) Radiologist or Neurologist |
| 76705 | Board Certified (ABMS) Radiologist or Neurologist |
| 76775 | Board Certified (ABMS) Radiologist or Neurologist |
| 76856 | Board Certified (ABMS) Radiologist or Neurologist |
| 76857 | Board Certified (ABMS) Radiologist or Neurologist |
| 76880 | Board Certified (ABMS) Radiologist or Neurologist |
| 93000 | Board Certified (ABMS or AOA) Internist or Cardiologist |
| 93224 | Board Certified (ABMS or AOA) Cardiologist |
| 93230 | Board Certified (ABMS) Cardiologist |
| 93306 | Board Certified (ABMS) Cardiologist |
| 93880 | Board Certified (ABMS) Radiologist, Neurologist, Cardiologist or Vascular Surgeon[3] |
| 93923 | Board Certified (ABMS) Radiologist, Cardiologist, Podiatrist or Vascular Surgeon |
| 93926 | Board Certified (ABMS) Radiologist, Cardiologist, Podiatrist or Vascular Surgeon |
| 93930 | Board Certified (ABMS) Radiologist, Cardiologist, or Vascular Surgeon |
| 93965 | Board Certified (ABMS) Radiologist, Cardiologist, or Vascular Surgeon |
| 93970 | Board Certified (ABMS) Radiologist, Cardiologist, or Vascular Surgeon |
| 93971 | Board Certified (ABMS) Radiologist, Cardiologist, or Vascular Surgeon |

**D. Exclusions from Participation Under 42 U.S.C. § 1320a–7(a)(4)**

63.     Section 1128(a)(4) [42 U.S.C. § 1320a–7(a)(4)] of the Social Security Act authorizes the

Secretary of Health and Human Services (Secretary) to exclude from participation in any federal

health care program (as defined in section 1128B(f) of the Act), any individual convicted under

federal or state law, of a criminal offense relating to the manufacture, distribution, prescription,

---

[3]    Further, refer to FCSO LCD 93875 Non-invasive Extracranial Arterial Studies for additional training requirements.

or dispensing of a controlled substance.

64.     A person with a felony conviction relating to a controlled substance is defined to include any individual who has been convicted for an offense which occurred after August 21, 1996, under Federal or State law, of a criminal offense consisting of a felony relating to the unlawful manufacture, distribution, prescription, or dispensing of a controlled substance. 42U.S.C. § 1320a–7(a)(4).

65.     The exclusion from participation under section 1128(a)(4) *must be for a minimum period of five years.* Social Security Act, section 1128(c)(3)(B) [42 U.S.C. § 1320a–7b(c)(3)(B)[4]].

66.     Aggravating factors can serve as a basis for lengthening the period of exclusion. 42 C.F.R. § 1001.102(b).

67.     The Act provides that, for purposes of an exclusion under section 1128(a)(4), an individual is considered "convicted" of a criminal offense:

> (1) when a judgment of conviction has been entered against the individual or entity by a Federal, State, or local court, regardless of whether there is an appeal pending or whether the judgment or conviction or other record relating to criminal conduct has been expunged;
> (2) when there has been a finding of guilt against the individual or entity by a Federal, State, or local court;
> (3) when a plea of guilty or nolo contendere by the individual or entity has

---

[4]     (B) Subject to subparagraph (G), in the case of an exclusion under subsection (a) of this section, the minimum period of exclusion shall be not less than five years, ....
>     42 U.S.C. § 1320a–7b(c)(3)(B)
>     .....
>     (G)  In the case of an exclusion of an individual under subsection (a) of this section based on a conviction occurring on or after August 5, 1997, if the individual has (before, on, or after August 5, 1997) been convicted—
>     (i) on one previous occasion of one or more offenses for which an exclusion may be effected under such subsection, the period of the exclusion shall be not less than 10 years, or
>     (ii) on 2 or more previous occasions of one or more offenses for which an exclusion may be effected under such subsection, the period of the exclusion shall be permanent.
>     42 U.S.C. § 1320a–7b(c)(3)(G)

been accepted by a Federal, State, or local court; or
> (4) when the individual or entity has entered into participation in a first offender, deferred adjudication, or other arrangement or program where judgment of conviction has been withheld.

Social Security Act, section 1128(i) [42 U.S.C. § 1320a–7(i)].

## E. Principals Convicted of a Program-Related Crime Under Section  420.204

68.     Within 42 C.F.R. Part 420 regulating program integrity, subpart C regulates "Disclosure of Ownership and Control Information" and requires that providers disclose ownership and control information and the identities of managing employees. 42 C.F.R. § 420.200.

69.     "Person with an ownership or control interest" means a person or corporation that is an officer or director of a disclosing entity that is organized as a corporation.  42 C.F.R. § 420.201.

70.     Regulations at 42 C.F.R. § 420.204 provide in part:

> (a) Information required. Prior to CMS's acceptance of a provider agreement or issuance or reissuance of a supplier billing number, or at any time upon written request by CMS, the provider or part B supplier must furnish CMS with the identity of any person who:
>> (1) Has an ownership or control interest in the provider or part B supplier;
>> (2) Is an agent or managing employee of the provider or part B supplier; or
>> (3) Is a person identified in paragraph (a)(1) or (a)(2) of this section and has been convicted of, or was an owner of, had a controlling interest in, or was a managing employee of a corporation that has been convicted of a criminal offense, subjected to any civil monetary penalty, or excluded from the programs for any activities related to involvement in the Medicare, Medicaid, title V or title XX social services program, since the inception of those programs.
>
> (b) Refusal to enter into or renew agreement or to issue or reissue billing numbers. CMS may refuse to enter into or renew an agreement with a provider of services, or to issue or reissue a billing number to a part B supplier, if any person who has an ownership or control interest in the provider or supplier, or who is an agent or managing employee, **has been convicted of a criminal offense** or subjected to any civil penalty or sanction related to the involvement of that person in Medicare, Medicaid, title V or title XX social services programs. In making this decision, CMS considers the facts and circumstances of the specific case, including the nature and severity of the crime, penalty or sanction and the extent to which it adversely affected beneficiaries and the programs involved. CMS also considers whether it has been given reasonable assurance that the person will not commit any further criminal or civil offense against the programs.
>
> (c) Notification of Inspector General. CMS promptly notifies the Inspector

14

General of the Department of the receipt of any application or request for participation, certification, re-certification, or for a billing number that identifies any person described in paragraph (a)(3) of this section and the action taken on that application or request.

71.    Medicare providers have a duty to familiarize themselves with Medicare's reimbursement rules, including those in the Medicare Manuals. *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 64-65 (1984).

72.    A provider's failure to inform itself of the legal requirements for participation in the Medicare program acts in reckless disregard or deliberate ignorance of those requirements, either of which is sufficient to charge it with knowledge of the falsity of the claims or certifications in question under the False Claims Act. *United States v. Mackby*, 261 F.3d 821, 828 (9th Cir. 2001).

## V. FRAUDULENT PRACTICES & SCHEMES

### A. General Overview of Defendants' Fraudulent Schemes.

73.    Defendant **Raymack Enterprises, Inc.** was founded by Ray W. McKenzie, who was president until it was acquired by Defendant Koplowitz in 2004.

74.    Defendant Raymack Enterprises, Inc. bills Medicare using the same Medicare provider number, E2725, from when McKenzie owned and operated the company.

75.    Defendant Raymack Enterprises, Inc. is now operated and controlled by Defendant Koplowitz, not Mr. McKenzie.

76.    Defendant Dennis Rosebrough used to control Defendant Portable Medical Diagnostics Inc.

77.    However, Defendant Rosebrough sold a majority share of Defendant Portable Medical Diagnostics, Inc. to Defendant  Koplowitz.

78.    Defendant Portable Medical Diagnostics, Inc. bills Medicare using the same Medicare

15

provider number, **W9857, the same number** used during the period when Defendant Rosebrough owned and operated company.

79.     For purposes of Medicare eligibility, an individual is considered "convicted" when "a plea of . . . nolo contendere . . . has been accepted by a Federal, State, or local court," or ". . . the individual has entered into participation in . . . deferred adjudication . . . where judgment of conviction has been withheld." Social Security Act 1128(i)(3), (4); 42 U.S.C. 1320a–7(a)(4).

80.     The felony possession of a controlled substance relates to the manufacture, distribution, prescription, or dispensing of the controlled substance.

81.     Defendant Koplowitz has been convicted of felonies relating to the manufacture, distribution, prescription, or dispensing of a controlled substances.

| Date | Description | Case No. |
|------|-------------|----------|
| 2/28/03 | felony possession of cocaine | 02019801 CF10A[5] |
| 10/11/02 | felony possession of cocaine | 02014192 CF10A |
| 12/31/02 | felony possession of cocaine | 02020546 CF10A |
| 12/31/02 | felony possession contr subst w/o prescription | 02020546 CF10A |
| 7/27/98 | felony possession of cocaine | 96015387 CF10A |

82.     As such, Defendant Koplowitz must be deemed "convicted" under the broad language of section 42 U.S.C. 1320a–7(a)(4).

83.     Defendant Koplowitz incorporated Reliable Diagnostic Imaging, Inc. in 1999.

84.     Defendant Koplowitz has been involved in the business of diagnostic imaging since 1999.

85.     Defendant Koplowitz has hidden from the government his control of his businesses because he would be ineligible due to his criminal convictions.

86.     To avoid the prohibition, he acquired Medicare provider numbers owned by Defendants Raymack Enterprises, Inc., Dennis Rosebrough, and Portable Medical Diagnostics Inc.

87.     Defendant Koplowitz's combination of these entities' Medicare provider numbers into a

---

[5]   Ex 2 -- Guilty plea and adjudication withheld.  This is still a "conviction" under 42 U.S.C. 1320a-7(i)(4).

single enterprise is evidenced through the commingling of physical office space, billing forms, and marketing.

88.     During a visit to Portable Medical Diagnostics (PMD), Relator witnessed a sign "Raymack X-Ray Facility."

89.     However, Raymack Enterprises, Inc. is not a portable X-ray provider.

90.     Relator witnessed a file cabinet at Portable Medical Diagnostics indicating it contains "Raymack," files.

91.     Relator witnessed Portable Medical Diagnostics' license on top of the Raymack file cabinet.

92.     Defendants provide services using various names, such as "Raymack Computerized Diagnostics" but the services are not billed through those purported "entities."

93.     A billing form used by Defendants identifies the name "Raymack Computerized Diagnostics, Inc." four times in describing the services, assignment of benefits, etc.

94.     The form also uses Defendants' address 6191 Orange Drive, Suite 4466, Davie Florida 33314.

95.     However, there is neither a fictitious name nor a corporation with that name in Florida.

96.     Nor is there a Medicare provider number or a NPI number associated with the name "Raymack Computerized Diagnostics, Inc."

97.     The "Raymack Computerized Diagnostics, Inc." form describes the services as "mobile diagnostics" and lists numerous procedures which can be billed under Raymack *Enterprises'* Medicare #E2725.

98.     However, three (3) of the procedure codes cannot be billed as mobile diagnostics (such as Raymack Enterprises, Inc. #E2725) and must be billed by a portable x-ray provider, such as

Portable Medical Diagnostics using provider number W9857. The three codes:

R0070 (Transportation of Portable X-Ray Equipment for 1 patient);

R0075 (Transportation of Portable  X-Ray Equipment for more than 1 patient); and

Q0092 (Set Up of Portable X-Ray Equipment Per Procedure).

99.     Defendant Koplowitz and the other Defendants commingle the marketing of services between these various companies and misrepresent the entities performing those services.

100.    Defendant Koplowitz was an Exhibitor at the FHCA (Florida Healthcare Association) 2010 Trade Show and listed himself under the intentionally obfuscating "Raymack Diagnostic Imaging - Mobile **Ultrasound** Services,  Bruce Koplowitz, 6191 Orange Drive, Ste 4466, Davie, FL, 33314, (954) 553-0546, fax: (954) 583-5142."  [emphasis supplied]

101.    This is consistent with the information on his "Raymack Diagnostic Imaging" business card.

102.    However, Defendant Koplowitz promoted Florida Bedside Imaging with a "FBI" booth and "FBI" promotional T-shirts worn by Koplowitz and by Defendant Rosebrough.

**B. Defendants' Services are Not Reasonable and Necessary –Lack of Supervision**

103.    During the relevant time periods herein, Defendants operated a diagnostic testing facility which billed the Medicare program for diagnostic testing services performed on Medicare beneficiaries.

104.    Defendants could not bill the Medicare program for diagnostic testing services without being an entity entitled to receive Medicare reimbursement for performance of those services.

105.    Services furnished without the required level of supervision are not reasonable and necessary. 42 C.F.R. § 411.32(b)(1).

106.    Defendant Robert J. Hyman served as the designated Medical Director for purposes of

medical supervision for Defendant Raymack Enterprises, Inc. d/b/a Raymack Diagnostic Imaging.

107.    Dr. Hyman's service began December 28, 2004 and continued without interruption through December 28, 2010.

108.    Dr. Hyman is not certified by the American Board of Radiology.

109.    Dr. Hyman holds no recognized credentials that evidence proficiency in the performance and interpretation of the diagnostic procedures performed by Defendant Raymack Enterprises, Inc.

110.    Defendant Robert J. Hyman, M.D., is not qualified to supervise portable X-ray imaging pursuant to the requirements set forth at 42 C.F.R. § 486.102(b).

111.    Likewise, Defendant Hyman fails to meet the proficiency required of a supervising physician for an IDTF under 42 C.F.R. § 410.33(b)(2).

112.    To the extent that services furnished without the required level of supervision are not reasonable and necessary, all claims for such services are false.

113.    All claims for services performed December 28, 2004 through December 28, 2010 are false.

**C. Defendants file Numerous Claims**

114.    Relator estimates that Defendant Raymack filed or caused to be filed over six thousand (6,000) claims per year in the amount of approximately $800,000 and that Defendant Florida Bedside Imaging filed or caused to be filed approximately seven thousand (7,000) claims per year in the amount of approximately $250,000.

115.    *Exhibit A* lists a sample (360) of these Medicare claims showing the patient number, date of service, procedure description, amount billed and date paid. To maintain patient

confidentiality, the patients' names are partially redacted and the exhibit includes only the first initial of the last name.

116.   *Exhibit B* shows three pages of "Medicare Remittance Advice" computer printouts addressed to Raymack Enterprises Inc. dated April 20, 2011 ($225 claims), April 21, 2011 (about $750, including claims for dual eligible Medicaid beneficiaries) and January 21, 2011 ($280).

## VI. VIOLATION OF THE FEDERAL FCA

117.   At all times material to the Complaint, Defendants certified that they were in compliance with the provisions contained within the Medicare and Medicaid program participation regulations as specified by the Secretary of the Department of Heath and Human Services although they knew these certifications to be patently incorrect and false.

118.   Accordingly, every claim for payment to the Medicare Part B Program by Defendants violated the False Claims Act for the reasons specified above.

119.   The United States of America has been harmed by each and every one of these false claims and is entitled to recover damages in accordance with the law.

120.   The United States of America did not know and could not reasonably have known of Defendants' false claims before Relator's disclosure to the Government of the facts material to the cause of action pled in this Complaint.

### D. Defendants have Conspired to Commit the Above Fraudulent Acts

121.   Defendants conspired and were complicit in the fraudulent scheme to get false or fraudulent claims paid.

122.   Defendant Bruce Koplowitz orchestrated and entered into agreements with:
   - Dennis Francis Rosebrough, Portable Medical Diagnostics Inc. and Florida Bedside Imaging, LLC),
   - Janet Barnett and Raymack Enterprises, Inc.), and

- Robert J Hyman,

in order to commit the frauds herein.

123.    The other individual Defendants and the Defendant entities they control, or purported to control, willingly and knowingly entered into these agreements and participated in them for over six years.

124.    The Defendant acted in furtherance of their conspiracy as detailed above and those allegations are incorporated by reference.

125.    The parties intended to defraud Medicare and other government payers as detailed above and those allegations are incorporated by reference.

126.    All parties know or should have known of the fraudulent and unlawful conduct of the other parties since the fraud could not have taken place without all parties participation. Ms. Barnett served as the straw officer for Mr. Koplowitz and allowed her names to be used on Medicare forms and allowed Mr. Koplowitz to hide his control. Mr. Rosebrough participated with Mr. Koplowitz in the scheme to allow Mr. Koplowitz to use his Medicare provider number. Dr. Hyman allowed his name to be used to secure Medicare and other government funds knowing he lacked qualifications.


### VII.  COUNT I:  ALL DEFENDANTS' FEDERAL FCA VIOLATIONS

Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

127.    This is a civil qui tam action by Relator, acting on behalf of and in the name of the Government, against all Defendants.

128.    Each of the Defendants violated the False Claims Act, 31 U.S.C. § 3729 *et seq*.[6], in that

---

[6]    Through May, 2009: 31 U.S.C. §§3729 (a)(1), (a)(2) and (a)(3).  After, as renumbered per

they:

a.      knowingly presented, or caused to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval.

b.      knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; or knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims, or to get false or fraudulent claims paid or approved;[7] and

c.      conspired to commit the above acts and to defraud the Government by getting false or fraudulent claims allowed or paid.

129.    Upon information and belief, the Government has paid Defendants' false claims in full.

130.    As a direct, foreseeable and proximate result of Defendants' conduct the Government has suffered actual, material damages, in an amount to be proven at trial.

131.    As a result, Defendants have wrongfully caused payments to be made from, and has wrongfully received monies derived from, the United States Treasury.

**WHEREFORE**, Relator prays for relief for violations of 31 U.S.C. § 3729 *et. seq.* against all Defendants as follows:

a. Full restitution to the United States of all money damages sustained;

b. Three times the dollar amount proven to have been wrongfully paid by or withheld

---

Fraud Enforcement and Recovery Act ("FERA"), 31 U.S.C. §§3729 (a)(1)(A), (a)(1)(B) and (a)(1)(C).

[7]      FERA amended 31 U.S.C. § 3729(a)(2) (2003), replacing the words "to get a false or fraudulent claim paid or approved by the government" with the words "material to a false or fraudulent claim." Pub. L. No. 111-21, §4, 123 Stat. 1617, 1621. That section has been renumbered as § 3729(a)(1)(B). FERA § 4(f)(1) provides that this change "shall take effect as if enacted on June 7, 2008, and apply to all claims . . . that are pending on or after that date." *Id.*, 123 Stat. at 1625.

from the United States;

c. Maximum civil penalties for each and all false records, statements, certifications and claims submitted to the United States;

d.  Relator's expenses, costs of suit, reasonable attorney's fees and the maximum Relator share, and in addition, a share of the proceeds of any alternate remedy pursuant to 31 U.S.C. § 3730(c)(5), including any remedy that may be available through any administrative process.

e. Pre-judgment and post-judgment interest;

f. Such other and further relief as the Court deems just and proper; and

g. That the Government and Relator receive any and all relief, both at law and in equity, to which they may reasonably appear entitled.


### VII.  COUNT II:  ALL DEFENDANTS' FLORIDA FCA VIOLATIONS


132.    The allegations in the preceding paragraphs are incorporated by reference.

133.    Defendants violated the Florida False Claims Act, F.S.A. § 68.081 *et seq*., in that they:

a.      knowingly presented or caused to be presented numerous false claims for payment or approval to an agency in violation of F.S.A. § 68.082(2)(a);

b.      knowingly made, used, or caused to be made or used, false records or statements to get false or fraudulent claims paid or approved by an agency in violation of F.S.A. § 68.082(2)(b); and

c.      conspired to submit false or fraudulent claims to an agency or to deceive an agency for the purpose of getting a false or fraudulent claim allowed or paid, in violation of F.S.A. § 68.082(2)(c).

134.    As a result of Defendants' violations of the Florida False Claims Act, the State of Florida

has suffered damages in an amount to be determined at trial.

135.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a
jury trial.

Respectfully Submitted,

**/s/ *Jonathan Kroner***
Florida Bar No. 328677
420 Lincoln Rd., Suite. 248
Miami Beach, FL 33139
305.310.6046
JK@FloridaFalseClaim.com
Attorney for Relator, Qui Tam Plaintiff,

Certificate of Service
I hereby certify that on the date stamped above I electronically filed the foregoing with the Clerk
of the Court by using CM/ECF system, which contemporaneously sent Notices of Electronic
Filing to all counsel of record.